IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL PALMER, JR. II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:19-cv-4610 |
| | ) |
| INDIANA UNIVERSITY, and | ) |
| THE TRUSTEES OF INDIANA | ) |
| UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff Paul Palmer Jr., II, by counsel, for his Complaint for Damages and Demand for Trial by Jury, states as follows:

### I.   INTRODUCTION

1. This is an action brought by Plaintiff PAUL PALMER, JR. II against Defendants INDIANA UNIVERSITY and THE TRUSTEES OF INDIANA UNIVERSITY (collectively "Indiana University"), between which parties there is an employment relationship. Indiana University violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") during Mr. Palmer's employment with Indiana University, by discriminating against him, failing to promote him, and failing to equitably pay him based on his African American race. Indiana University acted deliberately and in violation of Mr. Palmer's civil rights on the basis of his African American race.

## II.     EEOC COMPLIANCE

2. Mr. Palmer exhausted all of the administrative proceedings available to him by timely filing a Charge of Discrimination on the basis of national origin with the U.S. Equal Employment Opportunity Commission ("EEOC").

3. Mr. Palmer filed her Charge of Discrimination with the EEOC on or about May 15, 2019. A copy of Mr. Palmer's Charge is attached hereto and marked as Exhibit 1.

4. Mr. Palmer's Charge was timely filed in compliance with 29 U.S.C. § 626, 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5. Mr. Palmer received a Dismissal and Notice of Rights on August 23, 2019, which was dated August 21, 2019. A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6. This action was therefore timely filed within ninety (90) days of receipt by Mr. Palmer of the Dismissal and Notice of Rights.

## III.     JURISDICTION

7. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343 as well as 42 U.S.C. § 2000e-2.

8. The Title VII claims are authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

9. Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 2000e-5(g).

10. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## IV. VENUE

11. Mr. Palmer is a resident of Cuyahoga County in the State of Ohio and is a citizen of the United States of America.

12. Indiana University is a state-run institution of higher education, located in Bloomington, Monroe County, Indiana.

13. Defendant the Trustees of Indiana University is a body politic and under that name can be sued pursuant to Indiana Code § 21-20-2-2.

14. The unlawful employment practices alleged below arose in Monroe County, Indiana. This cause of action arose in Bloomington, Indiana, which is located in Monroe County. Monroe County is located in the Southern District of Indiana.

15. Thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## V. PLAINTIFF

16. Mr. Palmer is a citizen of the United States, and is currently, as he was during all times relevant to this Complaint, a resident of Cuyahoga County in the State of Ohio.

17. Mr. Palmer resides in Westlake, Ohio.

18. Mr. Palmer's race is African American.

19. Mr. Palmer is a person entitled to protection under Title VII based on his race.

## VI. DEFENDANTS

20. Defendant Indiana University is an employer, engages in an industry affecting interstate commerce, and, upon information and belief, employs more than 1,000 regular employees.

21. At all times relevant to this action, Indiana University has been the employer of Mr. Palmer.

22. Defendant the Trustees of Indiana University is a body politic and under that name can be sued pursuant to Indiana Code § 21-20-2-2.

## VII. STATEMENT OF FACTS

**A. Before joining Indiana University, Mr. Palmer had a successful career in marketing and brand management at several large, national corporations.**

23. Mr. Palmer's robust educational background includes a Bachelor of Science degree in Mechanical Engineering from Rose-Hulman Institute of Technology and a Master of Business Administration degree from Indiana University's Kelley School of Business.

24. Before joining the field of academia, Mr. Palmer spent several years in the corporate world in a variety of large businesses, including, but not limited to, The American Greetings Company, The Hasbro Toy Company, and The Proctor and Gamble Company.

25. In his positions with these corporations, Mr. Palmer led marketing initiatives that resulted in hundreds of millions of dollars in revenue for his employers.

26. Mr. Palmer made his first foray into academia at John Carroll University's Boler School of Business, where he served as an Adjunct Professor of Marketing and

successfully taught 2 of the required foundational marketing courses in the MBA/Executive MBA curriculum; "Consumer Behavior" and "Ethics & Corporate Social Responsibility."

**B.     In the Fall of 2010, Mr. Palmer joined Indiana University's Kelley School of Business as a Lecturer.**

27.     Mr. Palmer has been a non-tenure track lecturer at Indiana University's Kelley School of Business ("KSOB") since the Fall of 2010, or for approximately nine (9) years.

28.     Throughout Mr. Palmer's time with KSOB, he has been a member of the Marketing Department.

29.     Mr. Palmer is the only African American in the Marketing Department and is 1 of 4 total African Americans in the entire KSOB, which includes over 300 total faculty.

30.     Mr. Palmer was promoted to the position of Senior Lecturer with KSOB after six years at KSOB, a position he still holds.

31.     During his first and second years with KSOB, Mr. Palmer won multiple performance awards, including the Trustees Teaching Award in 2012, which honors outstanding teaching that has positively impacted student learning.

32.     In January of 2013, Mr. Palmer contacted his Marketing Department Chair H. Shanker Krishnan, and informed Chair Krishnan that he wanted to seek an early promotion to the position of Senior Lecturer.

33.     Chair Krishnan, however, discouraged Mr. Palmer from seeking an early promotion, stating, "No, you don't want to do that."

34.     Chair Krishnan told Mr. Palmer that Mr. Palmer could not be promoted to Senior Lecturer until his sixth year with KSOB.

35. During Mr. Palmer's first, second, and third years at KSOB, he received approximately a 1% salary increase each year, despite his excellent performance.

36. Between 2010 and 2012, Mr. Palmer's salary increased from $80,000 to only $82,600—or $2,600 only over 2 years.

**C.    KSOB treated a Caucasian non-tenure track lecturer far more favorably.**

37. In 2016, KSOB hired a Caucasian for a non-tenure track lecturer position in the Marketing Department with a starting salary of $82,500.

38. In 2017, this Caucasian lecturer's second year as a non-tenure track lecturer, KSOB gave him a 4.85% pay increase, moving his salary to $86,500.

39. In 2018, KSOB gave the same Caucasian lecturer an 8.67% pay increase, moving his salary to $94,000, which was only $4,750 less than Mr. Palmer's 2018 salary of $98,750.

40. After his hire, the Caucasian lecturer was offered additional teaching responsibilities, which were not offered to Mr. Palmer, which led to additional compensation that was denied to Mr. Palmer.

41. In addition, KSOB provided the Caucasian lecturer an office during his first year, while Mr. Palmer was required to use a cubicle.

42. In mid-February 2019, Mr. Palmer participated in a departmental meeting where he learned that Chair Krishnan sought to promote the Caucasian lecturer to the position of Senior Lecturer in his third year with KSOB.

43. This Caucasian lecturer's student evaluations were not as high as Mr. Palmer's student evaluations, and the Caucasian lecturer and Mr. Palmer shared similar backgrounds and experience before they began their careers at KSOB.

44. Thereafter, in April 2019, Mr. Palmer received an email confirming the Caucasian lecturer's promotion.

**D.   Mr. Palmer's concerns were not addressed by KSOB until June 30, 2019.**

45. On August 8, 2018, Mr. Palmer had a conference call with Lauren Maines, the Associate Dean of Faculty, wherein he outlined a significant number of concerns regarding racial discrimination, especially in comparison to his Caucasian comparator.

46. Specifically, Mr. Palmer told Associate Dean Maines that he believed that race discrimination had negatively impacted his salary, promotion to Senior Lecturer, office space, and additional teaching opportunities.

47. On October 17, 2018, Mr. Palmer met with Associate Dean Maines in person, to resolve Mr. Palmer's concerns that he communicated to Associate Dean Maines during the August 8th conference call.

48. In the October 17th meeting, Associate Dean Maines acknowledged several of Mr. Palmer's concerns, including the discrepancy in his salary and salary increases compared to his Caucasian comparator.

49. Mr. Palmer also informed Associate Dean Maines that he was assigned to a cubicle while his Caucasian comparator, a significantly junior colleague, was provided with a window office.

50. None of Mr. Palmer's concerns were addressed between October 2018 and February 2019.

51. After receiving an email relating to the Caucasian lecturer's early promotion to Senior Lecturer, Mr. Palmer sent an email to Associate Dean Maines, again outlining his complaints of race discrimination.

52. Indiana University finally attempted to address Mr. Palmer's complaints during the 2019-20 school year by providing Mr. Palmer an office (no window) in the Marketing Department and an increase in his salary relatively comparable to his Caucasian comparator.

53. Nonetheless, discrepancies between the Caucasian comparator's salary and Mr. Palmer's salary remain.

54. As a direct and proximate result of the foregoing conduct:

    a. Mr. Palmer incurred and continues to incur a substantial loss of past, present and future income;

    b. Mr. Palmer has suffered damage to his career;

    c. Mr. Palmer has suffered mental and physical anguish; and

    d. Mr. Palmer has incurred additional financial losses, including the costs associated with invoking his federally protected civil rights.

### VIII. STATEMENT OF CLAIMS

### COUNT I
*(Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964)*

55. Plaintiff incorporates the allegations in paragraphs 1 through 54 above, and, in addition, alleges that Indiana University discriminated against Mr. Palmer on the basis of his

race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

56. Mr. Palmer's race is African American.

57. It is clear from Mr. Palmer's physical features that he is African American.

58. Indiana University treated similarly situated employees outside of the protected class more favorably.

59. Mr. Palmer was subjected to a number of adverse employment actions, including, but not limited to: inequitable pay compared to similarly situated individuals outside of Mr. Palmer's protected class; a failure to promote Mr. Palmer early to a senior lecturer despite ample qualifications; and an assignment to a cubicle when other faculty in the Marketing Department were assigned offices.

60. Mr. Palmer was at all times and currently is still meeting and surpassing Indiana University's reasonable performance expectations.

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul Palmer, Jr. II prays for a judgment in his favor against Defendants Indiana University and the Trustees of Indiana University, and prays that the following relief be awarded:

(a) Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in racial discrimination and any other employment practice, which discriminates on the basis of race.

(b) Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals based on their race, and which eradicate the effects of its past and present unlawful employment practices.

(c)     Order Defendants to make whole Mr. Palmer by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Mr. Palmer's pecuniary losses.

(d)     Order Defendants to make whole Mr. Palmer by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e)     Order Defendants to make whole Mr. Palmer by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

(f)     Order Defendants to pay Mr. Palmer punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(g)     Order Defendants to pay Mr. Palmer special damages, in amounts to be determined at trial.

(h)     Order Defendants to pay damages to Mr. Palmer for any and all injuries to his career, in amounts to be determined at trial.

(i)     Award Mr. Palmer the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper and equitable.

(j)     Grant such further relief as the Court deems necessary and proper in the public interest.

## X.    **RESERVATION OF RIGHTS**

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI.    **JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*s/ Sandra L. Blevins*
Sandra L. Blevins
Courtney E. Endwright

*Attorney for Plaintiff Paul Palmer, Jr. II*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail:  litigation@betzadvocates.com