IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PAUL PALMER, JR. II,                        )
                                            )
            Plaintiff,                      )
                                            )
      *vs.*                                 ) Cause No. 1:19-cv-4610-JMS-MJD
                                            )
INDIANA UNIVERSITY,   and                   )
THE TRUSTEES OF INDIANA                     )
UNIVERSITY,                                 )
                                            )
            Defendants.                     )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE**

Plaintiff Paul Palmer, Jr. II ("Mr. Palmer") hereby asks the Court to deny Defendant the

Trustees of Indiana University's ("IU's")[1] *Motion to Exclude the Expert Witness Statement of Dr.*

*James R. Fairfield-Sonn* ("Defendant's Motion to Strike"). [Dkts. 66-67] and submits this Response

in opposition thereto. In support of this Response, Mr. Palmer shows the Court as follows:

## I.      INTRODUCTION

Without justification or explanation, IU filed a collateral motion to strike the *Expert*

*Witness Statement* of Mr. Palmer's expert, James Fairfield-Sonn, instead of within its *Reply in*

*Support of its Motion for Summary Judgment*. Mr. Palmer filed Dean Fairfield-Sonn's *Expert Witness*

*Statement* as part of Mr. Palmer's designation of evidence in opposition to *Defendant's Motion for*

*Summary Judgment*. [Dkt. 58-4]. IU's Motion to Strike clearly violates Local Rule 56-1(i) and is

---

[1] Defendant the Trustees of Indiana University continues to assert that "Plaintiff incorrectly names
Indiana University as a defendant in this case" because "The Trustees of Indiana University is the
proper legal entity." [Dkt. 67 at 1] (citing Ind. Code § 21-27-4-2), yet IU has never substantively
addressed the issue with this Court, including in its summary judgment briefing.

therefore procedurally improper. IU's collateral Motion to Strike uses an additional 15 pages to explain what should have been argued within its *Reply in Support of its Motion for Summary Judgment*.

Beyond this critical procedural violation, IU also fails to substantiate its Motion to Strike with any genuine bases for striking the *Expert Witness Statement* of Dean Fairfield-Sonn. Instead, most of IU's Motion to Strike mischaracterizes Dean Fairfield-Sonn's testimony by discussing the factual bases underlying Dean Fairfield-Sonn's opinions as if they are opinions that should be excluded. This is misleading and an inaccurate portrayal of Dean Fairfield-Sonn's testimony, especially his ultimate conclusions in his report.

In addition, IU cites inapplicable case law and overgeneralizes cases that are easily distinguishable from Dean Fairfield-Sonn's opinions. These arguments simply fail to provide a basis for excluding any of Dean Fairfield-Sonn's opinions at trial or especially at summary judgment, where motions to strike evidence are disfavored.

On summary judgment, this Court is focusing "on the most persuasive story possible on the non-movant's behalf" when it is considering "whether a verdict in [Mr. Palmer's] favor would be reasonable or could result only from irrational speculation." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020). Here, Dean Fairfield-Sonn's analysis contributes to the Court's analysis of whether Mr. Gildea was treated more favorably, whether Mr. Palmer was treated inequitably, and therefore whether IU's failure to promote Mr. Palmer and inequitable pay of Mr. Palmer were pretextual. Dean Fairfield-Sonn's testimony would be equally relevant and helpful to a jury at trial.

Accordingly, the Court should deny in its entirety IU's improper and unsubstantiated Motion to Strike. [Dkts. 66-67]. Furthermore, as IU has already requested that this Court

2

"exclude" Dean Fairfield-Sonn's testimony at trial, the Court should also deny IU the

opportunity of refiling an additional *Daubert* motion related to Dean Fairfield-Sonn's testimony.

## II.    __ARGUMENT__

**A.    IU styled its motion as a motion to "exclude," yet requested that the Court specifically strike Dean Fairfield-Sonn's *Expert Witness Statement* in the Court's "consideration" of the summary judgment briefing—this was exactly the type of collateral motion that violates Local Rule 56-1(i).**

**1.    The Court should reject's IU's attempt to flout the Local Rules of this Court by filing an improper collateral motion to strike Palmer's expert, James Fairfield-Sonn, as it relates to IU's Motion for Summary Judgment.**

Southern District of Indiana Local Rule 56-1(i) clearly states that in summary judgment

briefing, "**[a]ny dispute** over the admissibility or effect of evidence **must be raised** through an

objection within a party's brief." (emphasis added). Local Rule 56-1(i) is not discretionary or

optional—it is a "must."

Far from "rais[ing]" the issue in *Defendant's Reply in Support if its Motion for Summary*

*Judgment*, however, IU's Reply simply referred the Court to its 15-page, collateral motion to

strike. [Dkt. 65 at 7 n.5] ("IU is contemporaneously moving to exclude Dr. Fairfield-Sonn's

expert opinions on the grounds that his testimony is inadmissible pursuant to Federal Rule of

Evidence 702."). Comparing this 25-word footnote in its Reply to IU's Motion to Strike, which

was over 15 *pages* (about a 5,000 word difference), IU clearly used its Motion to Strike to

circumvent this Court's word limit and Local Rule 56-1(i).

Accordingly, the Court should deny IU's Motion to Strike on this basis alone.

**2.    IU wrongly acts like it did not file a motion to strike because it labeled this a motion to "exclude" and included a tangential request to exclude Dean Fairfield-Sonn's "opinions" at trial.**

Although it lacked any justification for violating L.R. 56-1(i), IU apparently believes that

labelling a motion as one to "exclude" removes it from being an improper collateral motion to

strike summary judgment evidence. Yet, IU's explicit request in this Motion to Strike was to "exclude [Dean Fairfield-Sonn's] opinions from its consideration during the evaluation of the [IU's] motion for summary judgment." [Dkt. 67 at 16]. *See also* Dkt. 67 at 11 (requesting that Dean Fairfield-Sonn's opinion "be stricken"). Whether it was labeled a motion to exclude or motion to strike, it was meant to accomplish the same purpose of striking Dean Fairfield-Sonn's *Expert Witness Statement*.

The district courts within the Southern District of Indiana, including this Court, have been clear that any motion to strike summary judgment evidence belongs in the parties summary judgment briefs, not collateral motions. *See* 2002 comment to former L.R. 56-1(f) ("Challenges to the evidence belong in the parties' briefs."). *E.g.*, *Thomas v. Wolfe*, No. 1:12-cv-00443-JMS-DKL, 2016 WL 4592201, at *2 (S.D. Ind. Sept. 2, 2016); *Shroyer Bros. v. Nichols*, No. 1:16-cv-00735-JMS-DML, 2016 WL 7455310, at *3 (S.D. Ind. Dec. 28, 2016); *Equal Employment Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, No. 3:17-cv-00147-RLY-MPB, 2020 WL 1663130, at *1 (S.D. Ind. Jan. 16, 2020); *King v. City of Fishers*, No. 1:18-cv-03524-SEB-MPB, 2020 WL 4726640, at *1-3 (S.D. Ind. Aug. 14, 2020); *Malibu Media, LLC v. Harrison*, No. 1:12-cv-01117-WTL-MJD, 2015 WL 13646107, at *1-2 (S.D. Ind. May 21, 2015).

It seems IU also believes its request to exclude Dean Fairfield-Sonn's "from the consideration of the jury in the event of a trial" changes the nature of its collateral motion to strike. [Dkt. 67 at 16]. This is wrong and belied by the text of IU's Motion to Strike. Tellingly, IU chose to title its motion as a "*Motion to Exclude **the Expert Witness Statement** of Dr. James R. Fairfield-Sonn*." [Dkt. 67 at 1] (emphasis added). This choice reveals that the thrust of IU's Motion is to strike Mr. Palmer's summary judgment evidence, **not** to exclude Dean Fairfield-

Sonn as a witness at trial. Adding a request to exclude Dean Fairfield-Sonn at trial as an afterthought to its Motion does not excuse IU's clear failure to follow L.R. 56-1(i).

"[B]ecause Local Rule 56-1 states that any dispute over the admissibility or effect of evidence must be raised through an objection within a party's brief," and the movant's "objection should have been (but was not) included in their reply brief," IU's collateral motion to strike should be denied in its entirety. *Thomas v. Wolfe*, No. 1:12-cv-00443-JMS-DKL, 2016 WL 4592201, at *2 (S.D. Ind. Sept. 2, 2016). *See also Equal Employment Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, No. 3:17-cv-00147-RLY-MPB, 2020 WL 1663130, at *1 (S.D. Ind. Jan. 16, 2020) (finding if movant "believe[d] that the [nonmovant] improperly used these ten witnesses' testimony in the summary judgment briefing, the appropriate action would have been to either file a motion pursuant to Rule 56(d) or a request to strike that evidence within the summary judgment briefing") (citing L.R. 56-1(i)).

At a minimum, the Court should reject IU's request to "exclude [Dean Fairfield-Sonn's] opinions from its consideration during the evaluation of the [IU's] motion for summary judgment." [Dkt. 67 at 16].

### 3. Even if this Court excused IU's violation of Rule 56-1(i), motions to strike evidence within summary judgment briefing are generally disfavored.

Motions to strike evidence in summary judgment briefing, including motions to strike "various portions of the opponent's affidavits," "are generally disfavored and information 'will not be stricken unless it is evident that it has no bearing upon the subject matter of the litigation.'" *Van Loo v. Braun*, 940 F. Supp. 1390, 1396 (E.D. Wis. 1996) (quoting *Securities and Exchange Comm'n v. Jos. Schlitz Brewing Co.*, 452 F.Supp. 824, 833 (E.D. Wis. 1978)). *See also Orr v. Roberson Mgmt. Corp.*, No. 06-2178, 2007 WL 809665, at *1 (C.D. Ill. Mar. 15, 2007) (citing *Clegg v. Sullivan Corp.*, No. IP00-1380CTK, 2003 WL 21254558, at *1 (S.D. Ind. March 31, 2003); *Fenje*

*v. Feld*, 301 F.Supp.2d 781, 789 (N.D. Ill. 2003)) (in examining motions to strike affidavits, stating "[m]otions to strike are disfavored," and "generally, it is not this court's practice to grant motions to strike when ruling on motions for summary judgment."); *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 830 (C.D. Ill. 2010) (quoting *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727–28 (7th Cir. 2006) ("The Seventh Circuit has expressed the opinion that motions to strike 'are not only unnecessary (from the parties' perspective) but also pointless (from the judiciary's).'").

IU has failed to satisfy the high burden necessary to strike Dean Fairfield-Sonn's *Expert Witness Statement* from the Court's consideration on IU's Motion for Summary Judgment, as further detailed below. The Court should therefore deny IU's unjustified and unsupported attempts to exclude Dean Fairfield-Sonn's *Expert Witness Statement* in its entirety.

**B.     IU fails to provide any actual bases for excluding Dean Fairfield-Sonn's testimony under Fed.R.Civ.P. 702.**

   **1.     IU does not dispute Dean Fairfield-Sonn's significant qualifications and experience.**

Dean Fairfield-Sonn's background and experience includes nearly 40 years of experience at the University of Hartford's Barney School of Business, "which like the Kelley School of Business at Indiana University is internationally accredited by the Association to Advance Collegiate Schools of Business (AACSB)." [Dkt. 58-4 at 3, 21-27]. *See also* Dkt. 58-4 at 21-27. Dean Fairfield-Sonn "was Tenured and rose through the ranks from an Assistant to an Associate and then on to a Full Professor of Management," and he has "also served in several administrative positions such as: the Chair of the Department of Management; Director of the Executive MBA Program; Interim Dean; and permanent Dean of the School of Business." Dkt. 58-4 at 3]. Moreover, Dean Fairfield-Sonn also "served as: a Chair and/or Member of several

Barney School of Business Promotion and Tenure Committees; as a Member on a University level Promotion and Tenure Committee Appeals Committee." Dkt. 58-4 at 3].

During his nine years as Dean, Dean Fairfield-Sonn "offered [his] own, independent Recommendations on Applications for Tenure and Promotion from Barney School of Business Faculty Members; and as a Member of the Provost's Promotion and Tenure Committee with [his] fellow University Deans jointly evaluated the merits of applications from all of the Schools at the University of Hartford." [Dkt. 58-4 at 3].

IU does not challenge any of these qualifications or experience or raise any issue with Dean Farifield-Sonn's credentials in offering an expert opinion in this case.

> 2. **Rather than arguing over the admissibility of Dean Fairfield-Sonn's opinions, IU quotes excerpts from Dean Fairfield-Sonn's *Expert Witness Statement* as if they are his only opinions, which is misleading, because the majority of IU's Motion to Strike focuses on Dean Fairfield-Sonn's factual bases for his opinions rather than his conclusions.**

Dean Fairfield-Sonn offered the following testimony in his *Expert Witness Statement*, which was based on multiple pages of analysis and factual background [Dkt. 58-4 at 7-10]:

> So, while the official Kelley School of Business policy on Promotion of Lecturers to Senior Lecturer status does not prohibit a Candidate from applying early for a decision with no penalty if the application is not successful, the advice Paul received from his Chair was not completely in line with the School's policy and if he had sought the opinion of the Dean or his former Chair, he would have heard other contradictory counsel. From the perspective of an AACSB Dean, there is a serious issue here because all Members of the Management Team should be fully aware of the policies and procedures to be followed around key Human Resource Management issues like a Faculty Member's rights to apply for Early Promotion or good, promising Faculty Members may mistakenly leave for opportunities at other Business Schools, when they can actually realize them where they are currently working. Moreover, the communication of that information should always be clear and consistent among all the Members of the Management Team, so Faculty rights to full and accurate information are respected and properly informed decisions can be made by interested Faculty Members. This is just good governance.

[Dkt. 58-4 at 9-10].

IU, however, mischaracterizes this "Opinion" as "an opinion that he would have given Prof. Palmer additional advice" and "Dr. Krishnan should have provided Prof. Palmer with additional advice under 'accepted university policies and procedures' is not even the subject of this litigation." [Dkt. 67 at 8-9].

From even a cursory review of Dean Fairfield-Sonn's opinion, it is clear that Dean Fairfield-Sonn's analysis was not simply that "additional advice would have been given" or that Dr. Krishnan's failure to provide this advice violated certain policies or procedures. These were factual bases supporting Dean Fairfield-Sonn's conclusions. Instead, Dean Fairfield-Sonn concluded that IU's failure in providing Mr. Palmer with accurate information about the promotion process created "a serious issue," because failing to do so, for instance, fails to comport with "Faculty rights to full and accurate information" and prevents "properly informed decisions" from being made. [Dkt. 58-4 at 9-10].

Beyond the fact that IU failed to accurately summarize Dean-Fairfield-Sonn's conclusions, IU's arguments fail on other bases as well. Furthermore, this analysis supports Dean Fairfield-Sonn's ultimate conclusions that "it is fair to conclude that compared to Joshua, Paul was not treated in an equally fair and equitable manner," and Mr. Palmer was "disadvantaged" compared to Mr. Gildea. This is relevant to whether Mr. Gildea, as a similarly situated comparator, was treated more favorably as well as whether IU's treatment of Mr. Palmer was pretextual. [Dkt. 58-4 at 18].

      a.      **Dean Fairfield-Sonn's analysis relates to whether Mr. Palmer was "disadvantaged" compared to Mr. Gildea, which is directly relevant to whether a similarly situated comparator was treated more favorably and directly relevant to pretext.**

Quoting *Naeem*, IU claims Dean Fairfield-Sonn's opinions were not "reliable and helpful expert testimony" because "[t]he law is clear that an employer's conduct need not be fair and need not represent good employment practice; it need only be nondiscriminatory," and Dean Fairfield-Sonn's "opinion that Dr. Krishnan should have provided Prof. Palmer with additional advice under 'accepted university policies and procedures' is not even the subject of this litigation." [Dkt. 67 at 9] (quoting *Naeem v. McKesson Drug Co., Inc.*, No. 95C5425, 2001 WL 1141803, at *2 (N.D. Ill. Aug. 14, 2001).

Nonetheless, IU wholly ignores this "Opinion" forms part of the basis for Dean Fairfield-Sonn's ultimate conclusions that "it is fair to conclude that compared to Joshua, Paul was not treated in an equally fair and equitable manner," and Mr. Palmer was "disadvantaged compared to Joshua [Gildea]," based on "the cumulative effective of a chain of events that led to this unfortunate result." [Dkt. 58-4 at 18]. Thus, these issues and differential treatment discussed between Mr. Palmer and Mr. Gildea is evidence that Mr. Palmer was treated less favorably than Mr. Gildea—an element of Mr. Palmer's Title VII claim—and IU's actions against Mr. Palmer were pretextual.

For instance, Dean Fairfield-Sonn noted that while Mr. Palmer "brought the possibility of going up for Early Promotion to his Chair Shanker Krishnan, he was advised to wait because the Chair's vote counted and he could not succeed without the support of the Department Chair," when two other witnesses—Dean Idalene Kesner and Marketing Department Chair Ray Burke—would have provided Mr. Palmer "contradictory counsel" to Dr. Krishnan's advice to Mr. Palmer. [Dkt. 58-4 at 9].

Dean Fairfield-Sonn determined that this "contradictory counsel" from Dr. Krishnan created a "a serious issue" [Dkt. 58-4 at 9] and therefore a significant disadvantage for Mr.

Palmer, compared to Mr. Gildea. Because this analysis relates directly to an element of Title VII claims—consideration of whether similarly situated individuals were treated more favorably than Mr. Palmer—and to whether IU acted with pretext, IU's relevancy argument fails.

          **b.**    **Courts commonly permit experts to testify to industry standards and whether such standards were followed.**

Despite IU's arguments to the contrary, courts have commonly permitted expert witnesses to testify about industry standards and whether such standards were violated. Numerous courts have also found that testimony such as what Dean Fairfield-Sonn has provided is helpful to a jury, even in university settings. *See, e.g., Humphreys v. Regents of Univ. of California*, No. C 04-03808 SI, 2006 WL 1867713, at *2 (N.D. Cal. July 6, 2006) (finding expert's "proposed testimony about the University's deviation from good human resources practices is proper expert testimony under Rule 702" because "[t]he University's failure to follow such practices is relevant to plaintiff's contention that the layoff was a pretext for gender discrimination or retaliation, and Finkelman's testimony will assist the jury because the average juror is unlikely to be familiar with human resources management policies and practices"); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000); *Bickerstaff v. Vassar College*, 196 F.3d 435, 453-54 (2d Cir. 1999); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 97 (2d Cir. 1999); *Kunda v. Muhlenberg Coll.*, 621 F.2d 532, 536–38 (3d Cir. 1980); *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978); *Wood v. Montana Dep't of Revenue*, No. CV 10-13-H-DWM, 2011 WL 4348301, at *2–3 (D. Mont. Sept. 16, 2011) (quoting *Sitter v. Ascent Healthcare Solutions, Inc.*, 2011 WL 2682976, at *1 (N.D.Cal. July 8, 2011)) (""[C]ourts commonly permit human resources

experts to testify on human resources management policies and practices and whether an employer deviated from those policies and practices.").[2]

Moreover, district courts within the Seventh Circuit have similarly found that "the standard of care in the industry" is an area in which "experts are generally permitted to address." *Peoples State Bank v. Stifel, Nicolaus & Co.*, No. 1:10-CV-1640-RLY-TAB, 2013 WL 1024917, at *9 (S.D. Ind. Mar. 14, 2013) (citing *Pless v. Cleveland Wrecking Co.*, 01–cv–0792, 2006 WL 2690074, at *3 (W.D.N.Y. Sept. 18, 2006)); *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, No. 1:11-CV-430-WTL-DML, 2015 WL 3448947, at *3 (S.D. Ind. May 29, 2015)  (permitting testimony as to "whether, in her opinion, [a physician's] termination was inconsistent with industry standards," which "is proper expert testimony because [the human resources expert] has knowledge of those industry standards that the jury does not."); *id.* at *6 n.9  (finding an "expert on the topic of graduate medical education programs," "may testify regarding whether it would be reasonable within the industry or under St. Vincent's own policies to require someone with the Plaintiff's performance record to repeat the first year of her residency, as that is something that is within her expertise and will assist the jury's understanding").

Thus, Dean Fairfield-Sonn's testimony is both permissible and relevant to Mr. Palmer's discrimination claims because it relates both to the analysis of a similarly situated comparator, Mr. Gildea, as well as the issue of pretext.

     **c.**     **Dean Fairfield-Sonn's testimony is readily distinguishable from *Naeem* and *Huey*.**

---

[2]  *See also Love v. TVA Bd. of Directors*, No. 3:06-00754, 2008 WL 906115, at *17 (M.D. Tenn. Mar. 31, 2008) (citing *Russell v. TG Missouri Corp.*, 340 F.3d 735, 746 (8th Cir. 2003); *Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038, at *5 (W.D. Wash. Feb. 5, 2009); *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1220 (10th Cir. 2002); *Bass v. Bd. of County Comm'rs,* 246 F.3d 1095, 1108 (11th Cir. 2001); *Maharaj v. California Bank & Tr.*, 288 F.R.D. 458, 460 (E.D. Cal. 2013)).

IU's cited cases are easily distinguishable and therefore are inapplicable here. For example, although IU attempts to compare Dean Fairfield-Sonn's *Expert Witness Statement* to the analysis of the *Naeem* expert, *Naeem* was a totally different type of case. *Naeem v. McKesson Drug Co.*, No. 95C5425, 2001 WL 1141803 (N.D. Ill. Aug. 14, 2001). For instance, the employee in *Naeem* did not argue there was a similarly situated comparator. *See Naeem v. McKesson Drug Co.*, No. 95 C 5425, 2000 WL 1720965 (N.D. Ill. Nov. 16, 2000) (decision on summary judgment). Moreover, the employee in *Naeem* did not argue that the expert's opinion related to the issue of pretext; thus, this issue was not the "subject" of the case. *Naeem*, No. 95C5425, 2001 WL 1141803, at *2.

IU furthermore omitted that the court in *Naeem* still permitted the employee's expert to testify at trial "to the extent that [the expert] can demonstrate that [the employer] failed to follow its own policies in its dealings with [the employee]" because the employer "plans to defend, in part, on the grounds that it followed its own policies," and the expert "has sufficient expertise to be able to assist the jury in understanding the meaning of a company's employment policies." *Naeem v. McKesson Drug Co.*, No. 95C5425, 2001 WL 1141803, at *2 (N.D. Ill. Aug. 14, 2001). Dean Fairfield-Sonn also provides this same kind of analysis that was permitted in *Naeem*.

Moreover, IU's reliance on *Huey* is also misplaced. Unlike the expert in *Huey*, Dean Fairfield-Sonn does not solely offer testimony as to whether the plaintiff "was the victim of a retaliatory discharge by [the employer] or racially motivated reasons in violation of Title VII . . . ." *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1086 (7th Cir. 1999). Instead, Dean Fairfield-Sonn offers testimony, using pages of analysis, concerning whether IU treated Mr. Palmer in an inequitable manner compared to Mr. Gildea. Dean Fairfield-Sonn did not solely provide, as was

12

the case in *Huey*, a "a conclusion, but no more," "nothing but a bottom line," or "only an ultimate conclusion with no analysis." *Id.* at 1086–1087.

Furthermore, unlike the expert in *Huey*, Dean Fairfield-Sonn did not rely on Mr. Palmer's word alone in his analysis. He examined numerous documents and all depositions in this case [Dkt. 58-4 at 4, 17-18], whereas when the expert in *Huey* was "[a]sked if he did more than accept Huey's view that [the employer] retaliated, [the expert] replied: 'I think he's the one that [sic] best knows what happened in the situation.'" *Huey*, 165 F.3d at 1086.

Thus, IU's limited review and analysis of its cited case law is distinguishable and unavailing.

### 3.     Dean Fairfield-Sonn's analysis of the importance of Dr. Krishnan's deviation from IU policies is also admissible.

IU objects to Dean Fairfield-Sonn's analysis that "the advice Paul received from his Chair was not completely in line with the School's policy and if he had sought the opinion of the Dean or his former Chair, he would have heard other contradictory counsel" because it supposedly "offers no specialized knowledge to assist the factfinder in understanding any issues in this litigation" and "is based on pure speculation." [Dkt. 67 at 9]. IU again misleadingly highlights the factual bases supporting Dean Fairfield-Sonn's opinions as bases to exclude his opinions, rather than his actual opinions.

IU ignores Dean Fairfield-Sonn's full opinions, which were not simply that Dr. Krishnan's actions failed to accurately convey IU's policies and procedures, but rather that "contradictory counsel" from Dr. Krishnan created a "a serious issue" [Dkt. 58-4 at 9] from which Dean Fairfield-Sonn was ultimately able to conclude (in tandem with additional analysis) that "it is fair to conclude that compared to Joshua, Paul was not treated in an equally fair

and equitable manner," and Mr. Palmer was "disadvantaged compared to Joshua [Gildea]," based on "the cumulative effective of a chain of events that led to this unfortunate result." [Dkt. 58-4 at 18]. Given that the average member of a jury would not have experience working at a university level business school or applying for a promotion in a university setting, and would be unlikely to understand or evaluate the potential impact created by IU's failure to accurately convey its policies to Mr. Palmer, including the disadvantages created by the disparate treatment of Mr. Palmer, Dean Fairfield-Sonn certainly offers "specialized knowledge" in his field.

Accordingly, IU's sole focus on Dean Fairfield-Sonn's statement that Dr. Krishnan's advice was "not completely in line" with IU policies limits and mischaracterizes Dean Fairfield-Sonn's opinions on this matter. Plainly, Dean Fairfield-Sonn's point is not simply that a policy was violated but that it created "disadvantages" for Mr. Palmer that led to negative consequences.

In addition, given that Dean Fairfield-Sonn used testimony from IU's own employees to support his conclusion, Dean Fairfield-Sonn's opinion did not involve "pure speculation." [Dkt. 67 at 9]. Dean Fairfield-Sonn noted that in their depositions, both Dean Kesner and Dr. Burke specifically contradicted what Dr. Krishnan told Mr. Palmer when Mr. Palmed informed him of his intention to apply for an early promotion. Dean Fairfield-Sonn quoted and provided citations to the relevant deposition testimony, which was altogether ignored by IU:

> As to Dean Kesner, in reply to the question about whether or not Shanker supported Josh going up for early promotion (7. Kesner Deposition, p. 143) she replied, "I would envision that Shanker gave Josh the same conversation that he would give every candidate who discusses going up early, which I would have done as department chair. And, that is, here are the things to be cautious about. Here are the risks involved. The decision is yours, but you must be aware of the pros and cons. But, I was not part of that conversation, so…(7. Kesner Deposition, pp. 143-144).

Meanwhile, when asked about a Faculty Member's decision to go up for Early Promotion, Ray Burke, Paul's former Chair replied, "….and the policy allows faculty to go up early. They…I don't think that they have to have the department chair's approval to go up early, but certainly they're encouraged to consult with the department chair. (5. Burke Deposition, p. 77)

[Dkt. 58-4 at 9].

IU's arguments fail because they disregard the full content of Dean Fairfield-Sonn's *Expert Witness Statement* as well as the purpose for Dean Fairfield-Sonn's testimony within Mr. Palmer's discrimination claims under Title VII.

**4.    IU attempts to exclude Dean Fairfield-Sonn's opinion comparing Mr. Palmer and Mr. Gildea because it disagrees with the facts supporting Dean Fairfield-Sonn's opinions. This is not a basis for excluding Dean Fairfield-Sonn's opinions.**

In its first argument addressing Dean Fairfield-Sonn's fundamental opinions in his *Expert Witness Statement*, rather than the factual bases for them, IU takes issue with Dean Fairfield-Sonn's opinions that "compared to Prof. Gildea, the University did not treat Prof. Palmer 'in an equally fair and equitable manner' in terms of availability of employment opportunities, including 'the timing of an early promotion review, timing of salary adjustments, additional service and teaching opportunities, and the provision of appropriate office space to support his work responsibilities.'" [Dkt. 67 at 11] (combining multiple pages of analysis, including Dkt. 58-4 at 4, 18). IU's basis for objecting to this opinion is that Dean Fairfield-Sonn "fails to identify or use any methodology and instead merely identifies points of comparison between Prof. Palmer's and Prof. Gildea's qualifications and salaries." [Dkt. 67 at 11].

IU's arguments ignore U.S. Supreme Court precedent and disregard that Dean Fairfield-Sonn's qualifications are extensive (which IU does not challenge in any way), and Dean Fairfield-Sonn's opinions are relevant to whether Mr. Gildea was treated more favorably than

Mr. Palmer, and whether IU's failure to promote Mr. Palmer and failure to equitably pay Mr.

Palmer were the result of racial discrimination in violation of Title VII.

> **a.** **IU ignores one of the U.S. Supreme Court's main conclusions in** *Kumho Tire,* **which was that experts are fully competent to testify based on their personal knowledge or experience.**

IU argues that Dean Fairfield-Sonn's comparisons of the treatment of Mr. Gildea to Mr.

Palmer should be stricken by solely relying on the factors set forth in *Daubert*, although the

*Daubert* factors are **not** a "definitive checklist or test," and a court's "gatekeeping inquiry

[concerning experts] must be tied to the facts of a particular case." *Kumho Tire Co., Ltd. v.

Carmichael*, 526 U.S. 137, 150–51 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S.

579 (1993)).

Moreover, although certain expert testimony "rests upon scientific foundations, the

reliability of which will be at issue in some cases, . . . . [i]n other cases, the relevant reliability

concerns may focus upon *personal knowledge or experience.*" *Id.* at 150 (emphasis added). Despite

citing *Kumho Tire* more than once [*e.g.*, Dkt. 67 at 7, 12], IU inexplicably ignores this central

conclusion in *Kumho Tire.*

Notably, an expert's testimony "cannot be solely evaluated by the *Daubert* factors, but

instead 'the relevant reliability concerns [that] . . . focus upon personal knowledge or

experience.'" *Peoples State Bank v. Stifel, Nicolaus & Co.*, No. 1:10-CV-1640-RLY-TAB, 2013 WL

1024917, at *4–5 (S.D. Ind. Mar. 14, 2013) (*citing Kumho Tire Co., Ltd.*, 526 U.S. at 150). *See also

Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761 (7th Cir. 2010); *Goldberg v. 401 N. Wabash

Venture LLC*, No. 09 C 6455, 2013 WL 212912, at *5 (N.D. Ill. Jan. 18, 2013); *In re: Tylenol

(Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2436, 2016 WL 807377, at *5 (E.D.

Pa. Mar. 2, 2016).

Rather, the *Daubert* factors fail to add to the analysis of Dean Fairfield-Sonn's opinions. In IU's own cited case, for example, *Peoples State Bank*, the court specifically concluded that where an expert "relies principally on his twenty-five years of experience in the industry, the *Daubert* factors **are not very helpful** . . . ." *Peoples State Bank*, No. 1:10-CV-1640-RLY-TAB, 2013 WL 1024917, at *5 (citing *Kumho*, 526 U.S. at 141) (emphasis added). Thus, despite IU's arguments that Dean Fairfield-Sonn must meet each of these factors under *Daubert*, "expert[] testimony is not unreliable simply because it is founded on his experience rather than on data." *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 803–04 (N.D. Ill. 2013) (citing *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010)). *See also Dubin v. Bd. of Madison Area Tech. Coll. Dist.*, No. 10-CV-35-WMC, 2011 WL 13209602, at *3 (W.D. Wis. Apr. 26, 2011) (citing *Metavante Corp.*, 619 F.3d at 761) (rejecting critique "because [plaintiff's expert] relied on his experience as opposed to some equation in reaching his opinions, he lacked a methodology").

IU additionally disregards that Dean Fairfield-Sonn bases his testimony on his extensive knowledge and experience gleaned through 40 years of experience at a university. Nevertheless, IU spends pages arguing Dean Fairfield-Sonn's analysis is inadmissible because he did not "identify or use any methodology." [Dkt. 67 at 3, 11-14]. Dean Fairfield-Sonn is well qualified, based on his personal knowledge and experience, to examine the effects of IU's differential treatment of Mr. Gildea and Mr. Palmer.

       **b.**      **Considering Dean Fairfield-Sonn has spent 40 years at a business school in various capacities, including as Dean for 9 years, Dean Fairfield-Sonn is qualified through personal knowledge and experience to examine or evaluate the objective qualifications of two faculty.**

Ignoring Dean Fairfield-Sonn's 40 years of experience and knowledge, IU takes issue with Dean Fairfield-Sonn's analysis that Mr. Palmer "did have an overall better set of Academic

Qualifications" at his hire than Mr. Gildea. [Dkt. 67 at 12]. IU alleges that Dean Fairfield-Sonn

"merely compares Prof. Palmer's and Prof. Gildea's curricula vitae ('CVs') and highlights

differences without any analysis or explanation." *Id.*

      IU's reliance on *McQuiston* to support its argument that Dean Fairfield-Sonn inadequately

supported his opinions is misleading and therefore unavailing. As an initial matter, the expert's

opinion in question in *McQuiston* (involving a personal injury rather than an employment

discrimination case) was that "[t]he basis of [an investigating officer's] opinions is contrary to

known vehicle dynamics." *McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 WL 554101,

at *8 (S.D. Ind. Mar. 4, 2009). This testimony relating to "vehicle dynamics" clearly rests on

scientific foundations unlike Dean Fairfield-Sonn's analysis. *Id.*

      Furthermore, the expert at issue in *McQuiston* lacked the same qualifications as the

defendant's expert, who had specifically relied on his "scholarship, his experience, and his

technical educational background," which included "a Masters degree and Ph.D. degree in

mechanical engineering and has performed engineering consultation for twenty-seven years." *Id.*

at *3, *8. In contrast, the plaintiffs' expert in *McQuiston* did not have "a bachelors, masters, or

Ph.D. degree in any discipline," and plaintiffs instead relied solely on their expert's "experience

as an accident reconstructionist" to satisfy Fed.R.Evid. 702 and *Daubert* "with respect to this

opinion." *Id.* at *8. The district court concluded that if the plaintiff's expert "wants to rely

exclusively upon his own experience to form an opinion in this case, as opposed to [the

defendant's expert] who relies upon scholarship, his experience, and his technical educational

background, Plaintiffs need to provide the specific knowledge that [plaintiffs' expert] gained

from his experience that relates to [the subject of his opinion]" and "explain how [plaintiffs'

expert] applied that knowledge to the facts of this case to form his opinion." *Id.*

Contrary to the expert in *McQuiston*, there is no scientific inquiry and no opposing expert who provided a scientific basis for his separate opinions. *McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 WL 554101, at *8 (S.D. Ind. Mar. 4, 2009). Indeed, IU disclosed no opposing expert witness. IU never even sought discovery from or sought to depose Dean Fairfield-Sonn. Unlike *McQuiston*, Dean Fairfield-Sonn identified the specific knowledge he gained from his experience that related to his opinion and explained how he applied that knowledge to the facts of this case to form his opinion. fundamentally, Dean Fairfield-Sonn fully supported his opinions in pages of analysis, which he was well qualified to make based on his 40 years of experience at a business school.

### i. Dean Fairfield-Sonn fully supported his opinions.

Even though Dean Fairfield-Sonn relied on deposition testimony rather than CVs (as IU falsely claimed), IU completely ignores Dean Fairfield-Sonn's analysis, which included detailed reasoning underlying his opinions:

- **Mr. Gildea's lack of any college- or university-level teaching experience**: "In terms of Academic Experience, in his deposition Joshua indicated that he did not have any prior teaching experience (9. Gildea Deposition), but on his resume he indicated that he had taught several short training courses (8. Gildea – CV – 2016)." [Dkt. 58-4 at 11].

  - **Identified difference with Mr. Palmer:** "In terms of Teaching experience, Paul had already taught an MBA course at John Carroll University and Joshua had not." [Dkt 58-4 at 12]. Dean Fairfield-Sonn also previously mentioned: "In terms of Academic Experience, Paul had already taught 'Consumer Behavior' as an Adjunct Instructor, to MBA Students at John Carroll University." *Id.* at 6.

  - **Additional qualification in Mr. Palmer's favor:** "Paul did have an overall better set of Academic Qualifications because he was a 2009 Graduate of the AACSB Bridge program for Professionally Qualified Faculty and Joshua was not." [Dkt. 58-4 at 12].

IU disregards Dean Fairfield-Sonn's full explanation of the significance of this program in his *Expert Witness Statement*:

> When Paul applied for a Lecturer position in the Marketing Department of the Kelley School of Business, he had a solid set of qualifications and experience for the position. In terms of Academic Qualifications, he had earned a BS in Mechanical Engineering from Rose-Hulman Institute of Technology, an MBA from the Kelley School of Business with a dual major in Marketing and International Business (4. Palmer Deposition, p.14), and of particular note, he was a 2009 Graduate of the AACSB Bridge-Program for Professionally Qualified Faculty at Ohio State), which would make him "Professionally Qualified" (PQ), an important accreditation qualification in an AACSB-accredited school of business (see 12. Policy Statement on the Lecturer/Senior Lecturer Rank), to teach appropriate subject matter courses in any AACSB accredited Business School for the next several years. (3. l Palmer - CV – 2010).

[Dkt. 58-4 at 6].

- **Significant differences in work experience and employers:** "[I]n terms of his Professional Experience after earning his MBA, [Mr. Gildea] had worked for one major corporation, General Electric, and two smaller Ohio based international firms, Carlisle Companies and Vitamix in Marketing positions where he had marketing budget responsibility. (8. Gildea – CV –2016)." [Dkt. 58-4 at 11].

  - **Identified difference with Mr. Palmer:** "As to Professional experience in Marketing, since earning an MBA degree, both individuals did have a number of important Marketing roles in a number of different companies, but because Paul not only had Marketing budget responsibility in his positions, but also Profit-and-Loss responsibilities in one of their positions, Paul's record is stronger on this dimension." *Id.* at 12. Dean Fairfield-Sonn had previously discussed that "in terms of his Professional Experience, after earning his MBA from the Kelley School of Business, he worked for a number of major corporations such as Firestone, Proctor and Gamble, and The American Greetings Company where he not only managed substantial marketing budgets, but in the case of The American Greetings Company he also had full Profit-and-Loss, General Management responsibilities (3. Paul Palmer, Jr., II, - CV – 2010)." [Dkt 58-4 at 6].

Dean Fairfield-Sonn therefore provides extensive analysis and factual bases for his opinions. *C.f. McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 WL 554101, at *8 (S.D. Ind. Mar. 4, 2009) (finding excluded expert "does not cite any research papers or data to support his

conclusion that the right side of the truck would miss the pedestrian if the right front of the truck missed the pedestrian," and the excluded expert "essentially points to his experience and states: 'That is enough'").

### ii. Dean Fairfield-Sonn is fully qualified to assess the qualifications of Mr. Palmer and Mr. Gildea.

IU offers no challenge to Dean Fairfield-Sonn's qualifications to assess the differences in qualifications and experience between Mr. Palmer and Mr. Gildea at their hire. And IU has no basis for doing so, considering Dean Fairfield-Sonn's extensive knowledge and experience gleaned from 40 years at various levels of a business school, including his serving "in several administrative positions such as: the Chair of the Department of Management; Director of the Executive MBA Program; Interim Dean; and permanent Dean of the School of Business;" "Chair and/or Member of several Barney School of Business Promotion and Tenure Committees;" "Member on a University level Promotion and Tenure Committee Appeals Committee;" and most significantly, "during [his] nine years as Dean at the School, [Dean Fairfield-Sonn] offered [his] own, independent Recommendations on Applications for Tenure and Promotion from Barney School of Business Faculty Members; and as a Member of the Provost's Promotion and Tenure Committee with [his] fellow University Deans jointly evaluated the merits of applications from all of the Schools at the University of Hartford." [Dkt. 58-4 at 3].

### iii. Given that Mr. Gildea was promoted 3 years early, his qualifications coming into IU are certainly relevant.

The standard for relevancy is whether the expert testimony is helpful or "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591–92. Nonetheless, IU argues that Dean Fairfield-Sonn's "opinion regarding [Mr. Palmer's and Mr. Gildea's] qualifications should be excluded because it would not assist the jury" since Dean

Fairfield-Sonn allegedly "failed to cite to any evidence in the record—because there is no such evidence—that these 'qualifications' are considered in determining salary increases or assigning additional teaching opportunities." [Dkt. 67 at 13-14].

IU's argument fails in multiple respects, including most fundamentally that this is not a tenure denial case, and IU never disputed that Mr. Palmer was qualified for promotion to senior lecturer. IU, however, almost entirely relies on irrelevant tenure cases, with completely distinguishable facts, as these cases involved a denial of tenure to a candidate, who disputed a university's contention that they were unqualified for tenure.

Even if IU disputed Mr. Palmer's qualifications (which it does not), whether a candidate is qualified for tenure involves subjective judgments, such as the quality of research, whereas the main focus on analyzing the qualifications of a lecturer are student evaluations and service, each of which have very objective criteria. In an evaluation of teaching, for example, "student evaluations" are "the <u>primary</u> determinant of the quality of teaching performance." [Dkt. 57-1 at IU309331] (emphasis in original). Similarly, IU's policy lays out exactly what types of activities constitute adequate service. [Dkt. 57-1 at IU309333-34] (listing "service evaluation examples" such as "[c]hairing important school committees or task forces," "[c]hairing important dept [sic] committees or task forces;" "[f]aculty council").

In addition, courts have permitted experts to opine in this area. *E.g.*, *Pittman v. Gen. Nutrition Corp.*, No. CIV.A. H-04-3174, 2007 WL 951638, at *4 (S.D. Tex. Mar. 28, 2007) (finding in a discrimination case involving a failure to promote case, "[a]nother admissible opinion [the expert] offers is the assessment that [a plaintiff] appears to be a 'very qualified management employee and one capable of further promotion,' and appears to be more qualified than some of the others who were hired or promoted to DSD").

22

Dean Fairfield-Sonn solely examines whether Mr. Gildea was treated more favorably than Mr. Palmer, which caused disadvantages to Mr. Palmer and a failure to treat Mr. Palmer "in an equally fair and equitable manner." [Dkt. 58-4 at 18]. This analysis relates both to whether IU treated similarly situated comparators more favorably and to pretext. Thus, IU ignores not only the content of the cases that it cites but also Dean Fairfield-Sonn's analysis in this case.

      **c.    Dean Fairfield-Sonn's testimony on the salary inequities between Mr. Palmer and Mr. Gildea are similarly relevant and admissible.**

IU's argument that Dean Fairfield-Sonn's finding of salary inequities between Mr. Palmer and Mr. Gildea was "conclusory" because "he does not apply any methodology or analysis to compel his conclusion" also lacks any merit because it ignores Dean Fairfield-Sonn's full analysis on this issue. [Dkt. 67 at 14]. Thus, according to IU, Dean Fairfield-Sonn "merely observes that there are a number of 'valuable' comparisons between Prof. Palmer's and Prof. Gildea's salaries," and "then lists the comparisons without adding any analysis," which ignores Dean Fairfield-Sonn's conclusions. [Dkt. 67 at 14-15].

IU's assertion that Dean Fairfield-Sonn offered no "methodology or analysis" is misleading because IU omitted an entire paragraph of Dean Fairfield-Sonn's *Expert Witness Statement* where Dean Fairfield-Sonn provided an evaluation of IU's own policies and "the key to understanding any of the . . . salary differences" between Mr. Palmer and Mr. Gildea. [Dkt. 58-4 at 15]. To support his conclusions of inequities in compensation, Dean Fairfield-Sonn reviewed the various components of Mr. Palmer's and Mr. Gildea's compensation from IU: their raises, their salary, and their teaching opportunities. [Dkt. 58-4 at 13-15].

Another significant omission by IU was another part of Dean Fairfield-Sonn's opinion, in which he stated that "when a Lecturer [at IU] earns high teaching evaluations in their core teaching assignments, which both Dean Kesner and Chair Burke say is true of Paul and Joshua,

they can both potentially do well on their base salary % raises. To do really well, however, requires taking on additional teaching and service opportunities, which for a variety of reasons has been more true for Joshua than Paul." [Dkt. 58-4 at 15].

In other words, Dean Fairfield-Sonn concluded that although Dean Kesner and Dr. Burke recognized that both Mr. Palmer and Mr. Gildea had earned high teaching evaluations, which should potentially set each lecturer up for "do[ing] well on their base salary % raises," Mr. Gildea was provided additional teaching and service opportunities, which on the balance were offered more frequently to Mr. Gildea than Mr. Palmer, and resulted in salary inequities. [Dkt. 58-4 at 15]. And, indeed, Dean Fairfield-Sonn reiterated this conclusion in a full paragraph of his ultimate conclusions. *See* Dkt. 58-4 at 18.

### 5. IU's assertions of factual inaccuracies in Dean Fairfield-Sonn's *Expert Witness Statement* fail to provide a basis for excluding Dean Fairfield-Sonn's opinions.

In several footnotes, IU appears to take issue with what it deems some potential factual accuracies in Dean Fairfield-Sonn's *Expert Witness Statement. E.g.,* Dkt. 67 at 6 n.5 (claiming IU "questions the accuracy of the information provided in these charts" without providing any evidence to actually dispute Dean Fairfield-Sonn's calculations); Dkt. 67 at 4 n.2 (claiming despite IU's own admission that "[s]ince the beginning of his employment, Prof. Palmer has had the highest base salary of all lecturers and senior lecturers within the Marketing Department"[3] and Dean Kesner's admission that Mr. Palmer was given "the highest [compensation] we had

---

[3] [Dkt 47 at 13] (quoting IU's summary judgment brief). *See also* Dkt. 58-4 at 4 (noting Dean Fairfield-Sonn's opinions were based on his review of *Defendant's Brief in Support of Motion for Summary Judgment*).

ever given, in combination, not just the supplement, but also the teaching credit reduction,"[4]

Dean Fairfield-Sonn "has no basis for this conclusion [Mr. Palmer] was provided "the highest

salary ever offered to a new Lecturer" because "he has no knowledge of the qualifications of the

other lecturers at the time they were hired.").

Even if IU's suggestions were accurate, which they are not, a difference in opinion on

the facts involved is not a basis for exclusion. *Peoples State Bank v. Stifel, Nicolaus & Co.*, No. 1:10-

CV-1640-RLY-TAB, 2013 WL 1024917, at *4–5 (S.D. Ind. Mar. 14, 2013) (quoting *Smith v. Ford*

*Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)) (The "'soundness of the factual underpinnings of

the expert's analysis and the correctness of the expert's conclusions based on that analysis are

factual matters to be determined by the trier of fact.'"); *In re Fluidmaster, Inc., Water Connector*

*Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *12 (N.D. Ill. Mar. 31, 2017)

(Plaintiff's "belief that [defendant's expert] should have cited something else *in addition to* the

sources cited by [plaintiff's expert] is not a valid *Daubert* challenge.") (citation omitted).

Thus, the Court should reject IU's assertions of inaccurate factual assertions or the

"soundness of the factual underpinnings" of Dean Fairfield-Sonn's analysis in their entirety. *C.f.*

*Fiserv Sols., Inc. v. Endurance Am. Specialty Ins. Co.*, No. 11-C-0603, 2014 WL 1415339, at *15 (E.D.

Wis. Apr. 14, 2014) (finding expert opinion unreliable because expert "fail[ed] to set forth any

basis for this opinion in his report," including "no explanation of the basis for his position;" "no

particular examples;" and no citation of "literature on the matter," leaving the expert's

"statement" as "merely his bare conclusion").

---

[4] *See* Ex. 1 attached hereto at 89:3–90:3 (Dean Kesner's deposition). *See also id.* at 81:2–82:17;  Dkt.
58-4 at 4 (noting Dean Fairfield-Sonn's opinions were based on his review of the deposition of
Idalene Kesner).

If IU has a legitimate concern about the evidence relied on by Dean Fairfield-Sonn, it "can certainly challenge [plaintiff's expert's] selection of evidence on cross-examination." *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-CV-00204, 2013 WL 5645353, at *6 (N.D. Ill. Oct. 15, 2013).

>   **6.     Because Dean Fairfield-Sonn's observations relating to the importance of an appropriate office space contributes to his conclusion that IU did not treat Mr. Palmer "in an equally fair and equitable manner," his analysis is both relevant and helpful to a jury.**

Ignoring Dean Fairfield-Sonn's analysis and conclusions, IU asserts that Dean Fairfield-Sonn's "comments on [IU's] assignment of office space and the work environment at the KSOB without rendering an opinion" because "these observations add nothing to the material issues in this case and do not constitute 'opinions . . . .'" [Dkt 67 at 16].

Nonetheless, once again, IU cites Dean Fairfield-Sonn's factual bases for his opinions, rather than his actual opinions. Dean Fairfield-Sonn, based on this analysis, concluded that Mr. Palmer "was indeed treated differently than a similarly situated white, male colleague in the same Marketing Department in terms of the availability of opportunities such as: the timing of an early promotion review, timing of salary adjustments, additional service and teaching opportunities, and the provision of appropriate office space to support his work responsibilities" [Dkt. 58-4 at 4-5], and, in part, based on IU's failure to provide office space to Mr. Palmer, "it is fair to conclude that compared to Joshua, Paul was not treated in an equally fair and equitable manner." [Dkt. 58-4 at 18].

Similarly, IU misleads the Court on Dean Fairfield-Sonn's discussion of the work environment at IU. A simple read of Dean Fairfield-Sonn's *Expert Witness Statement* demonstrates that Dean Fairfield-Sonn did not "merely list[] the categories of faculty positions and observe[] that 'the [KSOB] recognizes the need for and is engaged in a program to provide

greater support for Diversity, Inclusion, and Equity within the school," and instead—as IU later recognizes—Dean Fairfield-Sonn discussed these environmental concerns as "important aspects of the structure and culture within the [KSOB] [of which Prof. Palmer] needs to be aware" to be successful. [Dkt. 67 at 15-16; Dkt. 58-4 at 16]. Dean Fairfield-Sonn felt that these important aspects included not only knowledge of faculty positions, but also appropriate "developmental support" and the need for "greater support for Diversity, Inclusion, and Equity within the school." [Dkt. 58-4 at 17].

Dean Fairfield-Sonn specifically stated that he was providing this analysis to show how "the overall environment in the school could have contributed to Joshua receiving more employment opportunities than Paul did at the school." [Dkt. 58-4 at 5]. Based in part on his analysis of the work environment, Dean Fairfield-Sonn furthermore ultimately concluded that "it is fair to conclude that compared to Joshua, Paul was not treated in an equally fair and equitable manner;" and Mr. Palmer was "disadvantaged compared to Joshua [Gildea]," based on "the cumulative effective of a chain of events that led to this unfortunate result" of Mr. Palmer being treated inequitably;" and "to address the important issues raised in this case may require not just individual remedies, but also systemic change throughout the school." [Dkt. 58-4 at 18].

Dean Fairfield-Sonn's testimony relates to the heart of the determination in Mr. Palmer's discrimination case under Title VII: whether IU treated Mr. Palmer inequitably compared to a similarly situated Caucasian lecturer, Joshua Gildea, which also relates to whether IU's actions in Mr. Palmer's case were pretextual.

III.     **CONCLUSION**

Defendant's Motion to Strike is procedurally improper and without basis, and therefore should be denied in its entirety. Mr. Palmer therefore respectfully requests that the Court deny *Defendant's Motion to Exclude the Expert Witness Statement of Dr. James R. Fairfield-Sonn* [Dkts. 66-67]. Should the Court consider IU's arguments even though they are procedurally improper, Mr. Palmer requests that the Court bar any additional *Daubert* motion related to Dean Fairfield-Sonn's opinions. Mr. Palmer further requests all other just and proper relief.

Respectfully submitted,


*s/ Sandra L. Blevins*
Sandra L. Blevins, Atty. No. 19646-49
Courtney E. Endwright, Atty. No. 30557-49

*Attorneys for Plaintiff Paul Palmer, Jr. II*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana  46204
Phone: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com


**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


*s/ Sandra L. Blevins*
Sandra L. Blevins